```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF TEXAS
                        DALLAS DIVISION

UNITED STATES OF AMERICA,        §
                                 §
                    Plaintiff,   §
                                 § Criminal No. 3:09-CR-249-D(06)
VS.                              §
                                 §
MATTHEW NORMAN SIMPSON,          §
                                 §
                    Defendant.   §
```

MEMORANDUM OPINION
AND ORDER

As permitted by this court's memorandum opinion and order granting defendant's motion to unseal the government's *ex parte* application for post-indictment restraining order ("application") and to dissolve the court's protective order prohibiting dissemination of the application, *see United States v. Simpson*, 2010 WL 3633611 (N.D. Tex. Sept. 20, 2010) (Fitzwater, C.J.) ("*Simpson III*"), the government moves the court to redact portions of the affidavit submitted in support of the application. For the reasons that follow, the court denies the motion and orders the application unsealed and the protective order dissolved.

I

The government applied for *ex parte*, and obtained, a post-indictment restraining order to preserve the availability of property subject to forfeiture. The application included an affidavit prepared by an FBI Special Agent. On the government's motion, the court authorized the government to disclose the application to the attorneys for defendant Matthew Norman Simpson

("Simpson") under the terms of a protective order. Under the protective order, Simpson was prohibited from disseminating the application without first properly redacting the document under Fed. R. Crim. P. 49.1 and obtaining the court's permission. Simpson moved to unseal the application and dissolve the protective order. In *Simpson III* the court granted the motion, but it permitted the government to move to defer unsealing the application if it could show good cause to redact information contained in the application. *Simpson III*, 2010 WL 3633611, at *3. "The motion . . . must identify the contents to be redacted and the grounds for each requested redaction." *Id.* Under *Simpson III*,

> [i]f the court determines that there is good cause for any requested redaction, it will direct the government to file a redacted version of the application as a publicly-available document. If the court determines that no such redactions are justified, or if the government does not move for such relief, the court will order the application to be unsealed and will dissolve the protective order that prohibits dissemination of the application.

*Id.* The government filed on September 29, 2010 a motion to redact the affidavit. It asks that the names of 14 people be truncated and disclosed in the form of their initials. Simpson opposes the motion.

- 2 -

II

Whether to allow public access to court records is "best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 599 (1978). Any doubt should be resolved in favor of disclosure. *See Martin v. Lafon Nursing Facility of Holy Family, Inc.*, 2007 WL 2900498, at *1 (E.D. La. Oct. 3, 2007) (unsealing protective order where speculative effect of disclosure did not outweigh public's right of access). For good cause, the court can redact information in criminal filings, even if Rule 49.1(a) does not cover the information. *Simpson III*, 2010 WL 3633611, at *2 (citing Rule 49.1(e)(1)). "Although the government need not show a compelling interest to seal unindicted persons' names, it must demonstrate good cause." *Id.* (citing *United States v. Smith*, 602 F. Supp. 388, 397 (M.D. Pa.), *aff'd*, 776 F.2d 1104 (3d Cir. 1985)). "The court can order the redaction of [unindicted third parties' names] if it finds that substantial privacy interests would be violated by disclosure and that the redactions are narrowly tailored to protect the identities of the parties." *Id.*

In *Simpson III* the court held that the government had not articulated any specific concerns that would constitute good cause for redaction. *Id.* at *2, *3 n.2. "The primary concern is that public disclosure of the persons associated with criminal activity

may cause damage to the unindicted person's reputation with no corresponding opportunity to defend his reputation at trial." *Id.* at *2 (citing *United States v. Ladd*, 218 F.3d 701, 703 (7th Cir. 2000)). For the court to find good cause for a protective order, (1) "the harm posed by dissemination must be substantial and serious"; (2) "the restraining order must be narrowly drawn and precise"; and (3) "there must be no alternative means of protecting the public interest which intrudes less directly on expression." *Krause v. Rhodes*, 671 F.2d 212, 219 (6th Cir. 1982); *see also United States v. Foster,* 564 F.3d 852, 854 (7th Cir. 2009) (holding that general privacy concerns regarding witnesses did not justify keeping documents under seal).

### III

### A

The government requests that names of the 14 unindicted persons named in the affidavit be truncated and disclosed in the form of their initials. The government divides the names into two groups and discusses each one in a separate paragraph.

In ¶ 5 the government identifies 10 persons who were mentioned in the affidavit in a way that the government contends connects them to the commission of fraud. The government argues that because these persons are associated with criminal conduct, disclosure of their names would violate privacy interests. This assertion is conclusory. Even assuming *arguendo* that the affidavit

associates these persons with criminal conduct,[1] the government does not specifically establish how disclosure of these individuals' names amounts to a firm accusation, or how disclosure violates substantial privacy interests. *See United States v. Gonzalez*, 927 F. Supp. 768, 778 (D. Del. 1996) (holding that names should be released where "allegations in no way rise to the level of publication of the names . . . [suspected] of committing a felony but [not yet] indicted.").

Simpson also points out, and the government concedes, that some of the individuals listed in ¶ 5 are not persons at all but are pseudonyms or borrowed identities. Disclosure of these persons' identities under pseudonyms does not violate their substantial privacy interests.

In ¶ 6 the government lists two persons who are representatives of entities that provided information to law enforcement, and two persons who are owners of entities that were victimized by the alleged fraud. Although the government mentions that a grand juror was contacted and potentially intimidated or harassed by Simpson's family members, the government articulates no specific safety concerns regarding the persons identified in ¶ 6. The government's argument is conclusory, alleging only that the

---

[1]Because the court does not have before it all of the evidence on which the government intends to rely at trial, it does not suggest that the conduct alleged in the affidavit would not, when viewed together with other evidence, establish that the unindicted persons were involved in criminal activity.

privacy interests of these persons outweigh the need for publication. The government has not shown that *substantial* and *serious* privacy interests outweigh the public's right of access. *See Krause*, 671 F.2d at 219.

Simpson also points out that some of the names (the court has found seven of the fourteen) in ¶¶ 5 and 6 have been disclosed in much the same context in publicly-available search warrants. Persons who have been identified in other publicly-available court documents have a greatly diminished interest in protecting the privacy of their names. *See In re Search Warrant*, 1996 WL 1609166, at *3-4 (S.D. Ohio Aug. 20, 1996) ("[T]he diminished privacy interests of third parties whose names have already been made public──via court documents . . . [──]do not support redaction of their names and other identifying information[.]").

Accordingly, the court holds that the government has not demonstrated good cause to redact the names of unindicted third persons.

B

The government offers additional justifications for permitting redactions, alleging serious and potentially criminal conduct. In ¶ 7 the government asserts that it has serious concerns about potential press coverage and independent investigations, contending that this case has garnered more media attention than the average case; the press has conducted its own investigation or questioned

- 6 -

witnesses and family members; further publication of the names of unindicted coconspirators may cause the press to contact them or to associate them with criminal conduct; and independent investigations conducted by the press may deprive the defendants of their right to a fair trial and unduly infringe on the privacy rights of the witnesses, victims, and unindicted coconspirators. While these concerns are not categorically insignificant, the government has not sufficiently articulated or established that the serious and substantial privacy interests of the specific, unindicted persons named in the affidavit are likely to be compromised by disclosure of the names.[2]

In ¶ 8 the government alleges that certain defendants have contacted or attempted to contact witnesses and other defendants; certain defendants have provided or offered payments to witnesses or other defendants; Simpson has contacted other defendants himself or through family members; and Simpson has transferred money to another defendant. In ¶ 9 the government asserts that since the grand jury foreperson's first initial and last name were disclosed in a filing in this case, defendant William Michael Watts ("Watts") and Simpson have attempted to contact the grand jury

---

[2]Were the government to move for and demonstrate a need for court-ordered protection for witnesses, the court has the "inherent power to protect witnesses [stemming] from the 'indisputably broad powers of the trial judge to ensure the orderly and expeditious progress of a trial.'" *Wheeler v. United States*, 640 F.2d 1116, 1123 (9th Cir. 1981) (quoting *Bitter v. United States*, 389 U.S. 15, 16 (1976)).

foreperson on their own or through family members, jeopardizing the foreperson's and his spouse's privacy, and that Simpson's mother and stepfather actually visited the grand jury foreperson at his residence and telephoned him to harass and intimidate him or to solicit information from him. And in ¶ 10 the government alleges that certain defendants have posted false information on the Internet or used the Internet to publicize threats against other defendants.

These are serious allegations that may involve criminal conduct. But the government's assertions do not specifically relate to serious and substantial privacy interests of the named persons in the application, and the government's motion does not address how such concerns outweigh the public's right of access. So although these allegations, if true, do not provide sufficient grounds for redaction, they may be addressable by other means.[3]

---

[3] For example, there are statutes that criminalize certain interactions with witnesses and grand jurors. Threatening physical violence against any person with the intent to delay, prevent, or influence the testimony of that person at trial is a crime punishable by up to 20 years' imprisonment. 18 U.S.C. § 1512(a)(2), (3). Use of intimidation for the same purpose is also a crime punishable by up to 20 years' imprisonment. 18 U.S.C. § 1512(b). Endeavors to influence a grand juror by threats or force is a crime punishable by up to 10 years' imprisonment. 18 U.S.C. § 1503(a). In fact, defendant Michael Blaine Faulkner ("Faulkner") has been charged with obstruction of justice for threatening a witness or informant by posting threats on Faulkner's website.

C

The cases on which the government relies are distinguishable. In *Smith* a newspaper sought a list of unindicted coconspirators pursuant to the public's right of access. *See Smith*, 602 F. Supp. at 390-91. The court held that releasing the names would violate privacy rights because "[t]he list constitutes an informal accusation of wrongdoing[.]" *Id.* at 397. In the present case, however, the government does not specify how the affidavit accuses an unindicted person of wrongdoing. Moreover, the document at issue in this case is an affidavit that mentions names of unindicted persons; it is not a denominated list of alleged coconspirators, as in *Smith*. Several of the names in the affidavit are merely pseudonyms or borrowed identities allegedly used by defendants. The government's reliance on *Smith* is therefore misplaced.

*United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980), is likewise inapposite. In *Hubbard* the court remanded for a determination whether to unseal papers that were seized pursuant to a search warrant and "whose only relevance to the proceedings derived from the defendants' contention that many of them were not relevant[.]" *Id.* at 316, 325. Defendants introduced the documents solely to show the overbreadth of the search warrant. *Id.* at 317. The court noted that the public has historically been excluded from records to protect trade secrets and reputations of victims of

crimes, to guard against risks to national security, and to minimize the danger of unfair trial by publicity. *Id.* at 315-16. The court also noted that intimate details of individual lives are one example of a privacy interest that could be protected. *Id.* at 324. In the present case, however, no intimate personal details, trade secrets, national security issues, or victim reputations are discussed in the affidavit, and the application has greater relevance to the ongoing proceedings than did the materials at issue in *Hubbard*.

*Krause* likewise did not concern a court document like the affidavit at issue here. *See Krause*, 671 F.2d at 212. In *Krause* defendants in two civil suits appealed an order requiring post-trial disclosure of discovery material produced in the cases. *Id.* at 213-14. Because of the nature of the suit, the district court had permitted broad discovery, and defendants opposed disclosure of law enforcement interviews that were not admitted into evidence or made part of the records. *Id.* at 214, 216. The court affirmed the district court's order requiring disclosure with redaction of names. *Id.* at 219. The *Krause* court based its decision on the proposition that "the decision as to access is one best left to the sound discretion of the trial court." *Id.* at 219. But unlike the discovery materials in *Krause*, the affidavit in this case is part of the criminal record, and disclosure is to occur before, not after, trial.

Finally, in *United States v. Briggs*, 514 F.2d 794 (5th Cir. 1975), the grand jury handed up an indictment charging several unindicted persons of being coconspirators. *Id.* at 797. In ordering that the district court expunge the names of the unindicted persons from the indictment, the court noted that the impact of accusing an unindicted person in an indictment is greater than doing so in a bill of particulars and by trial testimony because the latter do not "carry the imprimatur of credibility that official grand jury action does." *Id.* at 805, 808. In the instant case, the government does not articulate how the affidavit accuses the unindicted persons of wrongdoing. It is not an indictment; it therefore does not carry an imprimatur of credibility accusing the unindicted persons of wrongdoing. Thus *Briggs* is inapposite.

\* \* \*

The government has not demonstrated good cause to make the requested redactions. Accordingly, its September 29, 2010 motion to redact is denied. The application is unsealed, and the protective order that prohibits dissemination of the application is dissolved.

**SO ORDERED.**

October 28, 2010.

                                                  SIDNEY A. FITZWATER
                                                  CHIEF JUDGE